[File No. 6999]

W. M. COVERSTON, Respondent, v. GRAND FORKS COUN-
TY, a Municipal Corporation; W. E. Block, E. O. Brye,
Clifton McIntyre, Nicolai Eddie, and James Bolger, Board
of County Commissioners of Grand Forks County, a Mu-
nicipal Corporation, Appellants, and Oscar O. Odegaard
and James P. Keogh, Respondents.

(23 NW2d 746)

Opinion filed July 5, 1946

*Milton E. Moskau,* States Attorney, and *Mr. Philip R. Bangs,* Assistant States Attorney, for Appellants.
*Day, Lundberg* and *Stokes,* for Respondent.
*S. E. Paletz,* for Respondents.

MORRIS, J.   This action was brought by W. M. Coverston, the original owner of Lot 10, Block 19, Kelsey's First Addition to the City of Grand Forks, to have a tax deed issued to Grand Forks County decreed null and void and for a further decree requiring the county to accept from the plaintiff the payment of past due taxes, penalty and interest and cancelling a deed executed by Grand Forks County to Oscar O. Odegaard.   The County of Grand Forks and the members of its board of county commissioners answered, through the states attorney of the county and his assistant, tendering issue with respect to the validity of the deed issued by the county to Odegaard.   The defendants, Odegaard and Keogh, also answered tendering issue

with respect to the validity of the deeds above mentioned and further alleging that Keogh had purchased the property from Odegaard and specifically denying that the plaintiff had any right of redemption or repurchase.

All of the parties appeared and were represented by counsel at the trial. The court found that the plaintiff was the owner of the property; that the tax proceedings whereunder the county obtained a tax deed were defective in that insufficient notice of the expiration of the period of redemption to the owner and occupants of the property was given and ordered judgment in accordance with his findings of fact and conclusions of law. Judgment was thereupon entered decreeing the plaintiff to be the owner of the premises in question and ordering Grand Forks County to issue a certificate of redemption therefor to the plaintiff for the taxes, penalty, interest, and costs tendered and deposited by him. The judgment also decreed that the deed from the county to Odegaard and the deed from Odegaard to Keogh be set aside as conveying no interest in the premises. Plaintiff was also given judgment against the defendants for costs. Grand Forks County and the members of the Board of County Commissioners appeal.

The plaintiff failed to pay the taxes levied against the property for the year 1939 and the subsequent years 1940 to 1943, inclusive. On December 10, 1940, the county auditor, at the regular tax sale, sold the property to Grand Forks County. The plaintiff failed to redeem from the tax sale. On May 24, 1944, the county auditor issued the statutory notice of expiration of period of redemption which he served on the plaintiff by registered mail addressed to him at 1822 Fifth Avenue North, Grand Forks, North Dakota. The address to which the notice was sent was the address shown by certified lists furnished to the county auditor by the Register of Deeds and Clerk of the District Court of Grand Forks County. The return receipt of the Post Office attached to the county auditor's affidavit of service shows that the notice was receipted for by "Mrs. Wm. Coverston" who signed on the line provided for the signature of the addressee's agent. Above this signature on the line provided for the signa-

ture or name of addressee appears to have been written the name of "Mr. Wm. Coverston." The plaintiff testified that he never received the notice and knew nothing whatever about it until after the tax sale.

No redemption from the tax sale having been made and the period of redemption provided by law having expired, the county auditor issued a tax deed to the county on October 2, 1944. The property was offered for sale by the county at the annual sale of lands acquired by tax deed which was held November 21, 1944. The appraised value was $800.00. The defendant Oscar O. Odegaard bid the sum of $800.00 for the property, which was to be paid $200.00 in cash and the balance on contract. He left his check for $200.00 with the county auditor who issued a receipt therefor. Mr. Odegaard executed a contract for deed which was acknowledged on December 2, 1944. This contract was never signed by the chairman of the board of county commissioners or county auditor. On December 5, 1944, Odegaard offered to pay the balance of $600.00 in cash, which offer was approved by the board of county commissioners. On the same day the chairman of the board of county commissioners and the county auditor executed a deed from Grand Forks County to Oscar O. Odegaard. The deed was left with the county auditor to be delivered to the grantee. Before it was actually delivered into the possession of Mr. Odegaard the plaintiff offered to repurchase under the provisions of Ch 286, Sess Laws ND 1941, and tendered to the county auditor the sum of $197.62, being the amount in full of delinquent taxes, penalty, interest, and costs assessed against the property. This tender was made on December 6th but after Odegaard had left with the county auditor a second check for the remainder of his bid. Shortly after the tender was made and on the same day the county auditor turned the deed over to Odegaard. The defendant Keogh holds a quit-claim deed from Odegaard.

The plaintiff attacks the validity of the deed to Odegaard on two grounds. He first asserts that the county failed to acquire title in the first instance because the notice of expiration of the period of redemption was not served upon him as provided by

Ch 286, Sess Laws ND 1941.. His next contention is that if it should be determined that the county acquired a valid tax deed to the property, he nevertheless asserted his right to repurchase and made a valid tender to the county of the amount that he was required to pay, while the county still had title to his property and that the deed which was delivered to Odegaard, after the plaintiff's tender was made, is void.

The plaintiff attacks the validity of the deed which the county obtained through tax deed proceedings upon the ground that notice of the expiration of the period of redemption was not served up on him as provided by law. Ch 286, § 4, Sess Laws ND 1941 (§ 57-2804, Rev Code ND 1943) provides for the service of such notice by registered mail and contemplates that such service shall be made upon all persons who appear to be interested in the property as owners, mortgagees, lien holders or otherwise. The register of deeds and clerk of the district court are required to furnish the county auditor with a certified list giving the names and addresses of such persons and it is provided:

"That said notice shall be served by registered mail, a registry and return receipt shall be demanded and filed with proof of service. The expense of such service by registered mail shall be added to the amount required to redeem, and paid by the person making the redemption in addition to the amounts stated in the notice. The Auditor shall make proof of such service by affidavit showing the names and addresses of all parties upon whom such notice was served with the date of mailing and shall attach the registry and return receipts thereto, and file such affidavit and receipts with the original notice of the expiration of the period of redemption."

The record shows without challenge that the county auditor complied in all respects with this statutory provision. The plaintiff testified that despite such compliance he did not receive the notice and knew nothing about it until after the county had obtained the tax deed. The return receipt shows that it was signed by the plaintiff's wife as his agent. He testified that she did not give him the notice nor did she tell him that she had

received it and that she was not his agent and was not authorized to receipt for his registered mail.

The plaintiff argues that the statute contemplates that the notice shall be received by the person to whom it is addressed and that since he did not receive it or learn of its contents it was not effective to cut off his right of redemption and that the county's tax deed is void.

It is exclusively within the power of the legislature to prescribe what notice shall be given and by whom in order that the county may acquire title to property against which it holds tax certificates. When the officer whose duty it is to serve the notice of the expiration of the period of redemption complies fully with the statute the service is complete and is effective to accomplish the purpose intended. In this case the county auditor complied fully with the statute. Personal delivery by mail or otherwise is neither required nor contemplated. The fact that the plaintiff did not receive the notice does not militate against the validity or effectiveness of the statutory procedure that was followed by the county auditor. It may also be noted that § 6 of Ch 286, Sess Laws ND 1941 (§ 57–2806, Rev Code ND 1943) provides, in addition to service of notice by registered mail, for publication of the notice of expiration of the period of redemption. Publication in this case is not questioned. In view of the compliance by the county auditor with the statutory requirements both with respect to the mailing and publication of the notice, we hold that the service thereof was valid and effective to cut off the plaintiff's right of redemption. Axt v. Bank of America, 72 ND 600, 10 NW2d 430; Schott v. Enander, 73 ND 352, 15 NW2d 303; Cota v. McDermott, 73 ND 459, 16 NW2d 54, 155 ALR 1271 and note; Buman v. Sturn, 73 ND 561, 16 NW2d 837. Thus the deed issued to the County of Grand Forks on October 2, 1944, conveyed to the county a valid title subject to the plaintiff's right to repurchase as the former owner of the premises.

The plaintiff claims to have exercised his right to repurchase the property under the provisions of § 19, Ch 286, Sess Laws ND 1941, which says that:

"The owner, or his successor in interest, shall have the right to repurchase all real estate heretofore or hereafter, forfeited to the county under tax deed proceedings, so long as the tax title thereto remains in the county."

He contends that at the time he made his tender the tax title remained in the county and thus squarely raises the question as to what is meant by the phrase "so long as the tax title thereto remains in the county."

When the county obtained its tax deed it thereby acquired a new, complete and paramount title. Buman v. Sturn (ND) supra. In order to determine the meaning of the questioned phrase we must consider the entire act of which it is a part and give it such construction as is consistent with the rest of the act and the purpose intended to be effected. Sections 12 and 13 of the act provide that the annual sale of lands acquired by tax deed shall be held on the third Tuesday of November of each year and shall continue from day to day until completed and notice of the annual sale must be given by posting and publication. Both notices shall include a description of all real estate to be sold, with the minimum sale price. Under the provisions of § 14:

"Each parcel of land shall be sold to the highest bidder therefor, but not for a sum less than the minimum sales price as fixed by the Board of County Commissioners, prior to the annual sale. Such sale may be made either in cash or one-fourth of the purchase price in cash and the balance in such annual equal installments as the purchaser and Auditor may agree upon, not to exceed a period of ten (10) years. Provided, however, that the purchaser shall have the right to pay any, or all, annual installments with interest, at any time prior to the maturity thereof. If such sale is for cash, the purchaser shall forthwith, pay the amount bid, to the County Treasurer. If the sale is for part cash and the balance in equal annual installments, the purchaser shall pay the amount of the first installment to the County Treasurer and shall be given a contract for deed, setting forth the terms of said sale, which shall be executed by the Chairman of the Board of County Commissioners and County Auditor.

Such contract shall be in such form as the State Tax Commissioner may prescribe and shall give the County the right, upon any default of the purchaser, to cancel such contract by resolution, and give due notice thereof to the purchaser. The original contract shall be filed with the County Treasurer who shall endorse thereon all payments made by the purchaser. That the unpaid balance of the purchase price shall draw interest at the rate of four (4%) percent per annum. That upon the payment of the purchase price in cash or upon installments with interest, in full, the county shall execute and deliver to the purchaser a deed conveying all right, title and interest of the county in and to such property, to such purchaser. That upon execution and delivery of such deed or such contract for deed, the real estate described therein shall be subject to taxation and be placed upon the assessment roll for taxation in the same manner as other private property."

Section 17 provides that all parcels of real estate not sold at the annual sale may be sold by the county at private sale at any time before the next annual sale at a price not less than the minimum fixed by the board of county commissioners prior to the annual November sale. A private sale must be held in abeyance for thirty days and notice given to the original owner or his successor in interest as prescribed by statute, in order to afford an opportunity to make redemption. "Provided, further, that if no redemption is made by the original owner or his successor in interest during said period of thirty (30) days, then the sale shall be final and the purchaser shall be entitled to a deed as provided herein." Section 18. Willard v. Ward County, 72 ND 291, 6 NW2d 566.

Reverting to a consideration of § 14, it appears that the county auditor is the officer authorized to conduct the sale as agent of the county. He is given direction to sell not only for cash but for "one-fourth of the purchase price in cash and the balance in such annual equal installments as the purchaser and Auditor may agree upon, not to exceed a period of ten (10) years." The purchaser is given the right to pay any or all installments with interest at any time prior to maturity. If the sale is for part

cash the first installment must be paid to the county treasurer and a contract for deed shall be executed by the chairman of the board of county commissioners and county auditor.

The record before us discloses that the annual sale was held on November 21, 1944, at which time Mr. Odegaard made a bid of $800.00 and paid $200.00, or one-fourth thereof, in cash. The bid was in writing and signed by the bidder. It was accepted. The county auditor, at the bottom of the written bid, executed a receipt for the cash thus paid.

The board of county commissioners did not meet until December 5, 1944. In the meantime and on December 2nd, Mr. Odegaard executed a contract for tax deed, wherein he agreed to pay Grand Forks County $800.00 for the property, payable $200.00 in cash and $600.00 in three equal annual installments of $200.00 each. This contract was never executed by the chairman of the board and county auditor. It remained in the hands of the county auditor until the board of county commissioners met. Odegaard's original written bid is stamped "Approved by Board of County Commissioners, December 5, 1944." On that date Odegaard offered to pay the balance of $600.00 which was accepted by the auditor and board of county commissioners. The county auditor added to his receipt the phrase "and check for $600". The board of county commissioners directed the issuance of a deed to Odegaard. It was executed by the chairman of the board and the county auditor on December 5, 1944, and left with the county auditor for delivery. The county auditor turned Odegaard's two checks for $200.00 and $600.00 respectively over to the county treasurer, who on December 6th issued a check of the Treasurer of Grand Forks County payable to the order of "G. F. County (Auditor)" for $800.00. This check remains uncashed and is an exhibit in the case.

On December 6th the attorney for the plaintiff brought a check into the county auditor's office for $197.62 payable to the order of "Grand Forks County Auditor" and tendered it to the auditor in full payment of the delinquent taxes, penalty, interest and costs assessed against the property. He then wrote on a typewriter an admission of tender which the county auditor signed.

While the attorney was in the county auditor's office, Mr. Odegaard came in and waited for his deed which was delivered to him after the attorney made his tender.

It is argued that where a county sells property acquired through tax deed proceedings at the annual sale prescribed by Ch 286, Sess Laws ND 1941, the sale is complete when the bid is accepted and that a sale so made terminates the right of the former owner to repurchase. The case of Lyche v. Steele County, 72 ND 238, 6 NW2d 92, is cited in support of this contention. In that case we held that where a sale of property acquired by the county through tax deed proceedings is held pursuant to Ch 235, Sess Laws ND 1939, the acceptance of the highest qualified bid by the board of county commissioners constituted a sale between the county and the bidder and terminated the right of the former owner to repurchase from the county.

The determination of whether the rule pronounced in Lyche v. Steele County is applicable to sales made under Ch 286, Sess Laws ND 1941, requires a comparison of this statute with the legislative enactments that governed our decision in that case. Ch 235, Sess Laws ND 1939, under which the sale was made in the Lyche case contains no provision for repurchase by the former owner. However, Ch 238, Sess Laws ND 1939, provided for the redemption of real estate forfeited to the county for delinquent taxes by former owners in the following language:

"Any real estate heretofore or hereafter forfeited to the county under tax proceedings, shall be subject to redemption by the owner whose title was forfeited, or his successor in interest, at any time while the tax title thereto remains in such county and *prior to re-sale*." (Italics supplied.)

Since the decision of Lyche v. Steele County, the legislature has rewritten the law pertaining to tax deed proceedings and the sale of property acquired by the county thereunder, by the enactment of Ch 286, Sess Laws ND 1941. This law was in effect and governed the sale now in controversy. Section 19 of this act provides that:

"The owner, or his successor in interest, shall have the right

to repurchase all real estate heretofore or hereafter, forfeited to the county under tax deed proceedings, so long as the tax title thereto remains in the county."

It is significant that the legislature omitted from the latter statute the words "and prior to re-sale" contained in Ch 238, Sess Laws ND 1939. Thus we are confronted with the question as to what effect shall be given to this omission. As the statute now reads the right to repurchase exists as long as the tax title remains in the county.

In considering the statute in the light of the facts in this case we find that Odegaard made a valid bid which was accepted by the county auditor who was the officer designated by statute to conduct the sale. The bid was for one-fourth cash with the balance to be paid in installments. Section 14 of Ch 286, Sess Laws ND 1941, requires that:

"If such sale is for cash, the purchaser shall forthwith, pay the amount bid, to the County Treasurer. If the sale is for part cash and the balance in equal annual installments, the purchaser shall pay the amount of the first installment to the County Treasurer and shall be given a contract for deed, setting forth the terms of said sale, which shall be executed by the Chairman of the Board of County Commissioners and County Auditor."

Odegaard did not make any payment to the county treasurer but did leave with the county auditor his check for one-fourth of the amount bid. No contract was ever executed by the chairman of the board of county commissioners and county auditor. Odegaard later gave another check for the balance of the purchase price. That check also was left with the county auditor. He presented Odegaard's two checks to the county treasurer who in turn issued a check as county treasurer payable to the county auditor for $800, the sum of both of Odegaard's checks. The latter check has never been cashed and now is in the files as an exhibit in this case. The deputy county treasurer testified that, "The check was issued in exchange for that money, because as long as we did not write a receipt for it we wrote a check to offset that money." He also testified that when his office received money

for the county a receipt was issued and that to his knowledge no receipt was issued for the $800. Thus it appears that no part of the amount bid by Odegaard for the property in question was paid or received into the county treasury and that the proceeds of his checks are still being held awaiting the outcome of this lawsuit. The statute clearly contemplates that payment shall be made into the county treasury as a condition precedent to the issuance of either a contract for deed or a deed to property acquired by the county through tax sale. In the absence of such payment Odegaard acquired no title either legal or equitable to the premises in question prior to the time that the plaintiff made his tender and offered to repurchase. When that offer was made the tax title remained in the county and the county thereafter had no right to attempt to transfer title by delivery of the deed to Odegaard. The delivery of the deed, therefore, was ineffective to convey title to him.

On March 12, 1945, the trial court heard a motion by the defendants to require the plaintiff to deposit with the clerk of court an amount equal to the sum paid by Oscar O. Odegaard to the county together with statutory costs. The motion was based upon § 21, Ch 286, Sess Laws ND 1941 (§ 57–4510, Rev Code 1943), providing that:

"That whenever any action at law or in equity is brought to test the validity of any deed issued and delivered by the county to the purchaser of lands acquired through tax deed proceedings, the Court shall not proceed with the trial of such action until the party assailing the validity of such deed, shall, within the time required by the Court, deposit with the Clerk thereof, for the benefit of the party claiming title under such deed, an amount equal to the sum paid by such party to the county for the purchase of the property covered by such deed, together with an amount sufficient to pay the defendants' statutory costs of the action, to be determined by the order of the Court."

The trial court held this section to be violative of § 61 of the North Dakota Constitution and, therefore, void. As a result of this determination he denied the motion. The motion was renewed at the beginning of the trial. The court then reserved

his ruling on the renewed motion and proceeded with the trial.

In their last paragraph of their brief the appellants state "If the Supreme Court is of the opinion that the judgment of the lower Court should be affirmed, then these Appellants respectfully submit that the Supreme Court should require the Plaintiff to make deposit, as demanded by the Defendants, and in accordance with § 57-4510 of the Revised Code of North Dakota for 1943."

The statute which we have quoted above provides that the deposit is for the benefit of the purchaser. Neither the purchaser, Mr. Odegaard, nor his grantee, Mr. Keogh, have appealed although they both were parties to the action in the court below. As we have already pointed out, the money paid by Odegaard to the county auditor has never been received into the county treasury but is being held by the county officers awaiting the outcome of this case. The tender of the plaintiff covers taxes, penalty, interest, and costs of sale. It, therefore, appears that under no circumstances has the county been prejudiced by the failure of the court to require compliance with the statute. The matter, therefore, does not merit further consideration on this appeal.

Affirmed.

CHRISTIANSON, Ch. J., and BURKE, NUESSLE and BURR, JJ., concur.